Good morning. May it please the court, my name is Anthony William Gomez, pro bono counsel for the petitioner Daniel Godoy-Ramirez. With me today is my co-counsel, Manmeet Soni from the Public Law Center, and amicus counsel, Aaron Morris from Immigration Equality. I will be speaking nine minutes and reserving two minutes for rebuttal, and the amicus counsel will be speaking for four minutes. This case is about a transgender woman from Mexico who, as a child, was raped, severely and physically assaulted, and emotionally abused, all on account of her sexual orientation and gender identity. She appeared before Immigration Judge Lorraine J. Munoz while detained in Pro Se, attempting to seek relief through asylum, withholding and removal, and protection under the Convention Against Torture. Daniel stated unequivocally to the IJ she feared for her life if forced to return to Mexico because she is transgender, and she tried her best to establish her claims, despite the IJ never informing her what she needed to prove to establish her claims. The record here shows that as a young child she knew she was different. She played with dolls and she played with girls. She knew by second grade that she had a feminine behavior, but unfortunately it was her feminine behavior that brought severe consequences. At age eight or nine, she was raped by her adult cousin. Indeed, her cousin stated, I know you're a faggot, I know you like this, I know you like my penis. At age 13 or 14, she was taunted and thrown urine at by a group of men in front of a group of police officers who simply laughed and later told her, you should be grateful you're not dead. At a similar age, Daniela and her transgender friend... She was found credible? Yes, Your Honor. There is no adverse credibility finding in this case, nor did the government contest any of these facts during the merits hearing in front of the immigration judge. Let me start you with the asylum claim where the BIA found that the application was untimely. Now, I take it that you want us to send it back? Yes, Your Honor, for two reasons. The first is that Daniela had established change in extraordinary circumstances, excusing her late filing of the asylum application. What were they? Well, Your Honor, as she stated in her declaration and testified before the immigration judge, she had stated that when she lived here in the United States, she began dressing as a woman. At age 16 or 17, she was found out about her transgender status by her parents, to which they kicked her out of the house. At age 17, she was forced to live out in the streets, and to survive, she had to go into sex work. And all these circumstances put together demonstrates change in extraordinary circumstances. Mind you that she was only 17, dealing with these horrific situations, and it wasn't until she had an opportunity at age 20... All right, because the BIA ruling says that the respondent on appeal asserts that the IJ violated her due process rights by failing to give them an opportunity to demonstrate exceptional circumstances. So your argument here is a little bit different. As I understand your comments just now, it's that, in fact, extraordinary circumstances have been demonstrated. So now that would give rise to an exhaustion problem. Well, Your Honor, there's two things I want to address on that. On the first, there is no exhaustion issue because the BIA had actually addressed whether there was change or extraordinary circumstances presented. In the first two sentences of that paragraph that you quoted, it states that it agreed with the IJ that no change or extraordinary circumstances were presented. So the IJ not only had an opportunity to look at the record to see if such circumstances were presented, it took that opportunity and made that ruling. It wasn't until the third sentence, in the beginning it says, on appeal, and then addresses what arguments were addressed before it on the appeal briefs. So there is no exhaustion issue here, Your Honor, because the BIA took the opportunity to look at it. Second, to address the confusion between whether there was a showing or a due process, there was both. We're making the argument that there was a due process violation because the IJ never asked Daniela, why did you file your asylum application late? So while Daniela had testified to these circumstances, to which they would have no other reasonable basis to be presented before it, other than for changed or extraordinary circumstances, Daniela never had the opportunity to preface her circumstances by saying, these are my changed and extraordinary circumstances. And so that's why the IJ concluded that there is no changed or extraordinary circumstances. That's why the BIA affirmed it. And that's why the government here is arguing, saying that these facts are not undisputed because they were never prefaced as saying these pertain to my changed and extraordinary circumstances. And that's all because the IJ failed to ask that simple question. And as this court has stated in Jacinto v. INS, the immigration judge has the affirmative duty to inform a pro se petitioner what he or she needs to prove to establish her claims, in this case being her asylum claim that she has to file within one year or demonstrate changed or extraordinary circumstances. And the immigration judge also has the affirmative duty to fully develop the record, which in this case would require the IJ to ask that one simple question, why did you file your asylum application late? And Daniela never had that opportunity as demonstrated in the transcript of the merits hearing. The immigration judge started off by saying, I'm about to ask you questions that address your asylum claim and never gave an opportunity for Daniela to testify in a narrative form. Daniela also presented incidents of her past persecution. As I stated earlier, she had the incident about rape, she had the incident about having urine thrown at her, to which the police officer simply laughed and told her later, you should be grateful you're not dead. But there was also an incident in front of a group of men to which one man took out a gun, shot it up in the air and said, if you don't run, I'm going to kill you, faggot. There was other incidents in the record that demonstrates persistent physical and emotional abuse, all because of her sexual orientation and gender identity. And all these incidents occurred before she turned 14 or 15. In the end, the IJ glossed over Daniela's age at the time of the incidents and relied only on speculative and conclusory facts to find that there was no past persecution shown. The IJ again relied on irrelevant evidence, evidence that had no bearing to Daniela's gender identity or shown any indication... Such as? Well, Your Honor, so the IJ and then the BIA relied on only one country condition report, the 2010 State Department report, and pulled out only three things out of it. That there was gay marriage, that there was gay adoption, and that there was anti-discrimination laws. But they're irrelevant because they do not pertain to Daniela's gender identity. The record is clear that gay marriage pertains to sexual orientation as well as gay adoption, and the anti-discrimination laws do not include gender identity. The record is clear with numerous country condition reports making that clarification. But more importantly, there's also no indication that Daniela would be protected from persecution by these efforts. Rather, this record demonstrates that there's widespread persecution of homosexual and transgender individuals in Mexico. For instance, the record states that 76.4% of homosexual and transgender individuals have suffered physical violence on account of their gender identity or sexual orientation. 76.4% is a significantly high number. What's the source of that statistic? Well, Your Honor, it was a 2010 study that was noted in the Canadian country condition report. In addition, there's also another report in a study from 2009 that found that 80% of murders committed against homosexual and transgender individuals were left unpunished. Eighty percent. The record also demonstrates incidents that the Mexican authorities have engaged physical violence, sexual violence, upon the same group of people, and that private individuals to which the government has been unwilling and unable to control. And turning back to the past persecution, there are several errors in which the BIA made in its order. First is that the BIA did not look at the age of all the incidents that Daniela had suffered. There is no indication on the opinion that demonstrates that they took into consideration the age. Second is that the BIA discounted the rape incident by stating that A, there is no showing that the rape was conducted because of Daniela's sexual orientation or gender identity, and B, by saying that there is no evidence that the government would have been unwilling and unable to control or to respond. However, Your Honor, there are several errors in that. First is that it is clear by the persecutor's words during the commission of the rape what he was motivated by. He used the words, faggot. He used the words, I know you like my penis. Those are the words that illustrate, undisputedly, that it pertained to her sexual orientation or gender identity. More importantly, it was his perception of her sexual orientation and gender identity. Now, in terms of the reporting issue, which I believe the government will call it media addressing, it is clear by the record that it would have been futile for her to report. But foremost, as this Court has stated in Castro-Martinez v. Holder, there is no requirement to report the rape incident, especially a child.  And more importantly, she was threatened by her adult cousin saying, if you're going to report, I'm going to kill you. Did you want to save a little bit of time for Mr. Morris? Yes, Your Honor. My name is Aaron Morris. I'm the Legal Director of Immigration Equality. At any one time, Immigration Equality represents about 500 open LGBT asylum cases. I'm here today to talk about how LGBT people identify themselves and how we are perceived by persecutors. This is deeply relevant to the case at hand and to the cases before and after this case, where it appears that an immigration judge denied a transgender woman's claims based in part on an assessment of what they thought was the experiences of gay, gender-conforming men in Mexico. While sexual orientation and gender identity are intimately related, they are not the same thing. To be clear, a transgender woman is a woman. She is not a gay man. This seems to be completely lost on the BIA and the immigration judge in this case. For example, the immigration judge asked the petitioner whether she understood if there were changes in Mexico City for gay people. The petitioner responded quite clearly, I know that they can marry, but at the end of the road, that doesn't help me anyway because I am transgender. It could not be more clear in this case. She followed that thought with the explanation of transgender people continue to be murdered. At another point, the immigration judge asked the petitioner whether her friend Paula was a woman or a transgender. Again, this is a complete misunderstanding of what it means to be transgender and it is clear in this case that she was confused by what the petitioner's identity was. To be clear, the nuanced understanding is wholly lost on persecutors. They conflate transphobia and homophobia. For example, the petitioner testified that she was targeted for abuse because she was effeminate and because she seemed like a girl. This is likely results in her transgender status, that's why she was persecuted. Still, the men who raped her, humiliated her, and threatened her with a loaded gun called her a faggot and a queer. It's certain then that she was attacked because she is in the LGBT community. It's also important to note that if it is dangerous to be gay in a country, it is almost always more dangerous to be transgender. Much of the animosity against LGBT people comes from our gender nonconformity. So if it's dangerous for an effeminate gay man, it might be more dangerous for an effeminate gay man than for a masculine gay man. Under this same rubric, transgender women are the most vulnerable among us. Identity issues are complicated, but they are not impossible to understand. Just as a judge might inquire as to whether a Christian is Baptist or Pentecostal, it's just as important that that judge identify what part of the LGBT community a person is involved in or identifies as. This can be a little confusing, especially where often transgender individuals first identify as gay and then have an evolving understanding to the conclusion that they were misgendered at birth, and so they take steps to transition and to realize their true female identity. Unfortunately, the errors of the immigration judge were repeated by the BIA. In dismissing her case, they referred to her as a gay man with a female sexual identity. That may be appropriate in other petitioners' cases. Certainly in Hernandez-Montiel and in Reyes-Reyes, that is how those people identified. Here, this woman could not have been more clear that she is transgender. It's not the same. For that reason, relying on Castro-Martinez to deny the case is also inappropriate. To conclude, it's not necessary for this court to articulate a new protected ground. Sexual orientation and gender identity in the Ninth Circuit, in the Second Circuit, in all sister circuits are protected grounds. What it must do is to remand this case when it is so clear that the agency misunderstood and did not properly assess the petitioner's claims. Thank you, Counsel. You're welcome. May it please the Court, Amy Carmichael for the Government. The Court's jurisdiction over a petitioner's untimely asylum application is restricted, and because the petitioner has not demonstrated eligibility for withholding, removal, or CAT based on the country conditions evidenced, the Court should deny the petition for review. In this case, there is an alleged due process violation, and you ran out of time before we gave you a chance to address the due process violation. In the prior case, they're making the same due process allegation, and as I understand it, the record reflects that they were both before the same IJ. First of all, is that correct? Same IJ? Same alleged due process violation?  And remind me, was this particular petitioner in pro se as well? This petitioner was pro se before the immigration judge, but was represented by counsel before the board. But before the IJ was pro se, as was the last petitioner in the last case we heard, and we've been very clear in the circuit that the IJ has a heightened responsibility when it comes to pro se petitioners. So what's the Government's argument that there was no due process violation in this case? Well, the argument is that any due process violation that there was could have been remedied by the board in proceedings before the board where a petitioner was represented by counsel. However, in her brief to the board, petitioner did not identify what circumstances the board should be considering in determining whether exceptional circumstances existed to excuse her untimely filing. The immigration judge was quite clear that she excused the untimely filing up until the point when petitioner turned 18. However, over two years passed between the petitioner's 18th birthday and when she was intercepted by ICE. But in the Government's view, there was a deficiency in the advisement in both cases by the IJ? Well, the earlier... I have an explanation for it, but my preliminary question is, was there a deficiency in the advisement by the IJ? Well, I think in this case it certainly would have been better had the immigration judge directly questioned this petitioner as to why she failed to timely file. However, the asylum application explicitly asks, are you filing this more than one year after your last entry, and if so, why? And the instructions that go along with the asylum application explain that you have to provide some reason for why you didn't file sooner and give some examples. And she left that question blank. She admitted that she was filing more than one year after but provided no explanation whatsoever for her failure to timely file. And how old was she at that point? 20. Was she still living on the street? Well, at the time she filed her asylum application, she was in ICE custody, but otherwise the record's not clear, I believe so. Setting aside what the asylum application informed us, we've required IJs to develop the record that goes towards whether there's a full and fair hearing requirement, right? And it didn't look like this happened in this case, or in the prior case either. Well, I think part of the problem here is that the board gets to address these issues first. The board gets to say, look, the immigration judge erred or didn't err, and we're going to remand for the immigration judge to fix that. But here, even though the petitioner did make arguments that there was a due process violation, they didn't identify any of the factors for the board to consider to make a new trial reasonable. The petitioner didn't identify any of the things that she thinks that immigration judge should have considered or should have brought out. A number of the factors that they point to in their brief before this court were actually brought out by the immigration judge. But they didn't point to those to the board and say, hey, you should consider these. Also, it's worth noting that a number of the things that they point to now occurred prior to her turning 18, so that was already in a period of time that was forgiven by the immigration judge. We need to find out why she waited two years after turning 18, and there's no facts that they've alleged that would support the conclusion that it was reasonable for her to wait. They didn't point out those facts to the board either. The board specifically found that despite the fact they're raising a due process violation, they haven't identified any of the relevant factors. Can you address the past persecution finding? Yes. Petitioner's sexual assault by her adult cousin was not on account of a protected ground, and she's not demonstrated that the government would have been unwilling or unable to protect a child from sexual assault by an adult. Castro-Martinez is instructive in this case because Castro-Martinez was also assaulted by an adult cousin. It was a teenage cousin and a friend repeatedly from the time that he was 6 to 10. In Castro-Martinez, the court found that although whether a crime is reported may be instructive, it's not the only consideration. The immigration judge and the board were clear in this case that failure to report is only one factor to be considered. Essentially, the failure to report causes a gap in the evidentiary record. Had the petitioner reported, we would know for sure whether the police would have intervened. Instead, having failed to report, we looked to see if other evidence of record  As in Castro-Martinez, the record indicates that the government prosecutes perpetrators to commit sex crimes against children, and there's no reason to think that this perpetrator would not also have been prosecuted. It's also worth noting that in Castro-Martinez, the petitioner had specifically testified that he believed that he was chosen by his rapists because he was effeminate, and it was still not sufficient to demonstrate that it was on account of his homosexuality. In this case, similarly, the fact that she was threatened and told that she liked it during her sexual assault is not an indicator by itself that her sexuality was one central reason for the assault. Rather, it appears that she was sexually assaulted by a pedophile, and while that's unfortunate, that doesn't meet the standard for past persecution. Additionally, the other incidents are clearly harassment, but harassment is also insufficient. I think we can look at the statements that were made during the assault in determining what the assault was motivated by. Well, the statements are one indicator, but again, this court has also found that, for example, being called a Russian pig during an assault is not sufficient to demonstrate that the assault was perpetrated primarily due to the ethnicity of the person. We may be reading different records, because the record I read reflects that a group of men are yelling homophobic remarks at the petitioner. The police witnessed it. They laughed. They told her she should be grateful to be alive and told her that they could do anything because they were the authority. And then another incident, a man brandished a gun, shot it in the air, yelled, I'm going to kill you faggots. She said she didn't report it because the last time she talked to the police, they didn't take it seriously. Well, these incidents are both good examples of harassment, but the immigration judge found that they could help her out. When you put them all together, doesn't this show abuse of transgendered individuals that the police turn a blind eye to? In Halim versus Holder, a Chinese-Indonesian student was stripped naked by other students, spat upon, threatened, refused treatment in a clinic, arrested and detained for a few days, and beaten by a mob during riots. And the court found that it was insufficient to demonstrate past persecution or that he would be individually targeted as a member of a disfavored group. Yeah, well, we weren't on that panel. Again, while the harassment in this case is certainly unfortunate and horrific, it is still harassment, and the record does not compel the conclusion that this treatment rises to the level of persecution. I think the government's making the same error that the BIA did in focusing on specific incidents and kind of looking at them in isolation. But there's a big pattern in this case. As Judge Parker said, some accumulative type of fact from abuse at a young age. These different incidents coupled with the fact that the police was present and witnessed it and piled on instead of taking steps to protect her. I don't see that discussion or that picture really fairly presented in the BIA's consideration. Well, again, also, because the petitioner was found ineligible for asylum, it's not enough to show that she may be persecuted. She has to demonstrate that it's more likely than not that she will be persecuted. Well, wait a minute. But if there's a finding of past persecution, that gives her a presumption. So the issue is very relevant, isn't it? It is very relevant. A burden shift to the government to rebut it? If there is a finding of past persecution. But again, petitioner's sexual assault in particular is really problematic because despite the fact that she... What do you mean problematic? It's problematic for her because there's not evidence demonstrating that the police would not have helped a child who was sexually assaulted regardless of her gender identity or sexual orientation. And that's precisely the finding in Castro-Martinez. Despite the fact that he was targeted because he was effeminate, there was not evidence of record, and it was very similar evidence to what was presented in this case. But the evidence of record shows that the Mexican government prosecutes people who sexually commit sex crimes against children. And that puts that... Why can't that gap in the evidence, the failure to report the rape when she was a child, be filled in by this incident where urine was thrown on her and the police witnessed it and threatened to kill her? I think it's different when it's harassment against somebody who's a little bit older and a very serious sex crime against a child. I think those are different things, and there's not evidence showing that while some police may ignore instances of harassment against a teenager, that they would turn a blind eye to the serious sexual assault of a child. Why does an incident where urine is thrown on a young girl, she's bombarded with vicious, homophobic, abusive language, the police watch it and do nothing, why does that, in your mind, amount only to harassment? It's similar to other... Isn't it minimizing it? It's because it's similar to other types of cases that the court has already found to be harassment. You think that's mere harassment? I don't think that harassment is not serious, but harassment is not persecution. So you think if we considered the entire picture of abuse since young childhood and all of these different incidents and acquiescence by the police, that it still doesn't amount to past persecution? That's the government's view? Yes, but I will also again say that I don't think it's clear at all from the record that the police did or would have acquiesced to her sexual abuse, and that's a separate issue, unless the court has further questions. Thank you for coming all the way from Washington for this. We gave you a hard time, but that's our job. Oh, yes, well, you're the one who was having difficulty because of the weather. We're glad you made it out here. We're glad you made it. So explain, why doesn't the untimely filing bar this case? It doesn't bar this case. I'm sorry, could you repeat that question again? Why doesn't the untimely filing bar this case? Well, the untimely filing does not bar this case in regards to her asylum application because she has demonstrated change or extraordinary circumstances. As the law has been clear here, that untimely filing can be excused. What are the post-18-year-old extraordinary circumstances? Well, Your Honor, during her post-18, she dealt with situations of being arrested because of her sex work that she was forced to, especially living out in the streets. She was in and out of jail, and it was through her jail process that got her in front of the immigration judge. So it wasn't until around 19 or 20 years old, in the beginning of 2012, where she was provided the opportunity to file her asylum application. But her circumstances that she suffered around 17 extended until up to that point. But this also addresses the second question, the second issue, that the immigration judge violated or did not take on her affirmative duties of telling Daniela what she needed to prove to establish eligibility for asylum. And Daniela would have an opportunity to first preface her circumstances and address any additional questions that the judge might have regarding that issue. Are you looking for a rerun on timeliness? Your Honor, what we're seeking is that Daniela's petition for review be granted and that this court reverse the BIA's findings with asylum, withholding and removal, and protection of the defendant. And that's what I wanted to clarify, the same thing that Judge Parker's last question alluded to. I'm looking at the BIA brief, which indicates that the argument is the failure to provide her with an opportunity to explain extraordinary circumstances. So, frankly, prior to the hearing, I thought you were going to say, well, give her a chance to explain the extraordinary circumstances. But instead, as I take your argument today, it's make a finding that she presented extraordinary circumstances. And I recognize this court's concern about that, which is why we also alternatively state that at least remand the entire case so that Daniela has the full opportunity to demonstrate her claims before the court. And she wasn't given the opportunity to demonstrate fully her changing extraordinary circumstances, which was what this court has been referring to presented to the BIA and before this court today as well. All right. Thank you very much. We appreciate your arguments. The matter is submitted.
judges: Pregerson, Parker, Nguyen